UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM ERICKSON, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NEBRASKA MACHINERY COMPANY,<br><br>    Defendant. | Case No. 15-cv-01147-JD<br><br>**ORDER TRANSFERRING CASE**<br>Re: Dkt. No. 15 |

In this copyright infringement suit, plaintiffs Jim Erickson and his production company allege that defendant Nebraska Machinery Company displayed ten of his photos on its website without permission. Since the inception of the case, the parties have fought over personal jurisdiction. NMC filed a declaratory judgment suit in the District of Nebraska, which the court dismissed in December 2014 for lack of personal jurisdiction over plaintiffs. Plaintiffs then sued in this district, and NMC now disputes this Court's specific personal jurisdiction over it. The Court finds that it lacks personal jurisdiction over NMC and transfers the case to the District of Nebraska, where NMC is located and where it agrees jurisdiction is proper.

## FACTUAL BACKGROUND

As the complaint alleges, Jim Erickson is a professional photographer based in California, and Erickson Productions, based in Petaluma, California, is the sole distributor and exclusive licensor of his photos. Complaint ¶¶ 2-3, 5, Dkt. No. 1. NMC is a regional dealer and servicer provider for heavy equipment and machinery, including Caterpillar equipment. Declaration of Curtis M. Akey ¶ 2, Dkt. No. 15-4. Its corporate headquarters and principal place of business is in Omaha, Nebraska, and it mainly sells in Nebraska and a small part of Iowa. *See id.* ¶¶ 2-3. It has made nine sales of equipment to equipment dealers in California. *See* Declaration of Rusty Rogers ¶ 6, Dkt. No. 15-5. None of the nine sales was completed using NMC's website. *See id.* ¶ 8.

NMC admits that in 2012, when it was redesigning its website, an employee, Jason McCants, copied ten photos from Erickson Productions' website. *See* Affidavit of Jason McCants ¶ 4, Dkt. No. 15-2. McCants says that he used the images in his mockup of the redesigned website as placeholders for other images that he anticipated receiving once he had approval from NMC to proceed with the redesign. *See id.* ¶ 6. He claims that before he made the redesigned website public, he submitted a license request for the photos through Erickson's website, http://www.ericksonstock.com/. *See id.* ¶ 8. Afterwards, he says he was contacted by phone by a representative of "Erickson Photography," who discussed with him the possibility of licensing the photos to NMC. *See id.* ¶¶ 10-15. Erickson never contacted NMC again, and NMC proceeded to launch its redesigned website in December 2012. *See id.* ¶ 16. The redesigned website, ostensibly "due to inadvertence, oversight, and lapse of time," included the Erickson photos as background and decoration. *See id.* McCants says that he first heard that Erickson believed that the website's use of the photos was an infringement of its copyright on January 21, 2014, and that the photos were removed from NMC's website within twenty-four hours. *See id.* ¶ 17. Both the websites for Erickson Productions and Erickson Stock feature California locations -- San Francisco and Petaluma, respectively -- and did so in late 2012, when the alleged infringement took place.[1]

## LEGAL STANDARD

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008). If the court does not require an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* Uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor*

---

[1] Plaintiffs provided copies of current versions of these websites, *see* Dkt. Nos. 24-1, 24-2, but the Internet Archive's Wayback Machine shows that the websites were substantively identical during the relevant timeframe. Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, *see* Fed. R. Evid. 201; *Pond Guy, Inc. v. Aquascape Designs, Inc.*, No. 13-13229, 2014 WL 2863871, at *4 (E.D. Mich. Jun. 24, 2014); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 2013 WL 6869410 (S.D.N.Y. Dec. 30, 2013), and the Court does so here.

*Co.,* 374 F.3d 797, 800 (9th Cir. 2004); *Boschetto,* 539 F.3d at 1015.  On the other hand, the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation omitted).

Where, as here, no federal statute authorizes personal jurisdiction, the Court applies the law of the state in which the court sits.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  California's long-arm statute, Cal. Code Civ. P. § 410.10, is coextensive with the limits of the Constitution's due process clause, so the Court need only ensure that that clause permits its jurisdiction.  *Schwarzenegger*, 374 F.3d at 800-01.  In addition to the requirements of personal jurisdiction, venue in a copyright infringement lawsuit is proper only in a "judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction."  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010).

Personal jurisdiction comes in two varieties, general and specific, *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-415 (1984), but the parties here agree that NMC is not subject to general personal jurisdiction in California.  To be subject to specific personal jurisdiction:

> (1)  the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2)  the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3)  the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.  Of the two tests stated in the first prong, purposeful direction is the one generally used in tort cases, like this one. *Yahoo! Inc. v. La Ligue contre le Racisme et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc).  The Ninth Circuit has held in order for there to be purposeful direction of activities at the forum state by the defendant, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

3

(internal quotation marks omitted).

## DISCUSSION

### I. PERSONAL JURISDICTION

NMC may have purposefully directed its activities at California in three ways: by allegedly infringing Erickson's copyrights, by initiating license negotiations with Erickson, and by maintaining its own website, which was accessible from California. The Court addresses each possibility in turn.

#### A. Copyright Infringement

In arguing that NMC's use of Erickson's photographs satisfies the "express aiming" prong of the Ninth Circuit's purposeful direction test, plaintiffs contend that the fact that their websites provide a California address put NMC on notice that the owner of the copyright to the photographs was located in California. A line of cases from the Ninth Circuit has held that when a defendant is accused of infringing a copyright while knowing that the copyright owner is located in a certain jurisdiction, its conduct is "expressly aimed" at that jurisdiction:

> We have repeatedly stated that the "express aiming" requirement is satisfied, and specific jurisdiction exists, when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (quotations omitted); *see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (holding in non-copyright case that the express aiming requirement is "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state"); *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures Television Inc.*, 523 U.S. 340 (1998) (holding that the fact that defendant "willfully infringed copyrights owned by" plaintiff known to be in California "alone is sufficient to satisfy the 'purposeful availment' requirement").

4

But whether these cases are still good law is doubtful in light of the Supreme Court's recent decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.2003) (en banc) ("[W]here intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority[,] . . . district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled."). *Walden* reversed the Ninth Circuit to hold that personal jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State" and that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 134 S. Ct. at 1122. It expressly extended this holding to the intentional tort context, explaining that its holding was rooted in the proposition that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant -- not the convenience of plaintiffs or third parties." *See id.* 1122-23. And it rejected the idea, inherent in *Washington Shoe*, that a defendant's knowledge of a plaintiff's forum connections and the foreseeability of harm there are enough in themselves to satisfy the minimum contacts analysis. *Id.* at 1124-25.

District courts in the Ninth Circuit have split on whether, and to what extent, *Walden* overruled prior Ninth Circuit law. *Compare Under a Foot Plant, Co. v. Exterior Design, Inc.*, No. 6:14-cv-01371-AA, 2015 WL 1401697, at *4 n.1 (D. Or. Mar. 24, 2015) (holding that *Walden* limited the Ninth Circuit's application of the effects test) *with Leibman v. Prupes*, Ni, 2:14-cv-09003-CAS(VBKx), 2015 WL 898454, at *8-9 (C.D. Cal. Mar. 2, 2015) *and Exobox Techs. Corp. v. Tsambis*, No. 2:14-cv-00501-RFB-VCF, 2015 WL 82886, at *6 (D. Nev. Jan. 6, 2015) (holding that the Ninth Circuit's pre-*Walden* cases remain good law). But the courts adhering to the pre-*Walden* cases have not explained how *Washington Shoe*'s holding that "express aiming" is established whenever "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state," *Washington Shoe*, 704 F.3d at 675, can be squared with *Walden*'s express holding that to find personal jurisdiction based on the defendant's "allegedly direct[ing] his conduct at plaintiffs whom he knew" had connections to the forum state is to "improperly attribute[] a plaintiff's forum connections to the defendant," *Walden*, 134 S. Ct. at 1125. The Court thinks these holdings cannot be reconciled, and that

5

*Walden* overrides *Washington Shoe* generally, and certainly with respect to the specific holding plaintiffs cite it for here.

*Walden* acknowledges that it does not address intentional torts committed "via the Internet or other electronic means," like the copyright claim at issue here. *Walden*, 134 S. Ct. at 1125 n.9. But although the Ninth Circuit applies a special test -- discussed below in Section I.C -- in evaluating whether a defendant purposefully directs its activities at a forum state by setting up a website, *see Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997), it has not indicated that a different "express aiming" test applies to intentional torts based on whether the Internet was used. To the contrary, the fact that the Supreme Court held that it would be a violation of the defendant's due process rights to be forced to submit to personal jurisdiction based merely on his or her knowledge of the plaintiff's location suggests that the high court's holding cannot be cabined to torts committed in the non-virtual world. *See Under A Foot Plant*, 2015 WL 1401697, at *4 & n.1 (applying *Walden* to hold that defendants publishing of copyrighted images on their website did not subject them to personal jurisdiction).

In the only precedential Ninth Circuit decision available at the time of this decision that applies *Walden*, the court held that personal jurisdiction in California could not be based on statements a non-California resident made to another non-California resident, even where those statements allegedly interfered with a sales contract held by the California-based plaintiffs. *See Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015). The court emphasized that the defendant's alleged tortious interference was committed "without entering California, contacting any person in California, or otherwise reaching out to California," and that the alleged injury -- an inability to access out-of-state funds -- was "not tethered to California in any meaningful way" and "would follow him wherever he might choose to live or travel." *Id.*

The same can be said here. The mere act of copying Erickson's photographs and posting them on NMC's website did not involve entering California, contacting anyone in California, or otherwise reaching out to California. There is no evidence that Erickson's web page is even hosted in California. And any injury that NMC's alleged copyright infringement caused is not localized in California, apart from the fact that plaintiffs are based there. If Erickson were to leave

6

California, the alleged injury would, as in *Picot*, "follow him wherever he might choose to live or travel." *Id.* Consequently, the Court concludes that plaintiff has not made out a prima facie case that personal jurisdiction over NMC exists here.

### B. License Negotiations and Sales in California

As a fallback, plaintiffs argue that NMC purposefully directed its activities at California by filling out a form on Erickson's website to request a license for the photographs it copied. Whether true or not, this claim is irrelevant because plaintiffs' copyright infringement claim does not arise out of those license negotiations. The Ninth Circuit has held that claims "arise out of" contacts with the forum state if, but for those contacts, the claim would not have arisen. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, it is plain that the copyright infringement claims do not owe their existence one way or another to NMC's attempt to seek a license. If plaintiffs' allegations are correct, their copyright infringement claim would lie even if NMC had not reached out for a license.

Establishing personal jurisdiction based on NMC's nine sales to California entities fails for the same reason: the copyright claim at issue here would be unchanged whether or not those sales were made. It follows that the copyright claim does not arise out of those contacts, and those contacts cannot form the basis for exercising personal jurisdiction over NMC.

### C. NMC's Website

Although not clearly raised by plaintiff, the Court addresses whether NMC's own website can give rise to personal jurisdiction in California. "Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Mavrix*, 647 F.3d at 1231. Instead, in the Ninth Circuit, "[w]hen evaluating purposeful direction in the context of websites, courts typically examine the 'level of interactivity and commercial nature of the exchange of information that occurs on the website to determine if sufficient contacts exist to warrant the exercise of jurisdiction.' " *Craigslist, Inc. v. Kerbel*, No. 11-cv-3309-EMC, 2012 WL 3166798, at *4 (N.D. Cal. Aug. 2, 2012) (quoting *Cybersell*, 130 F.3d at 415). The point of the inquiry is to determine whether the "defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *See Cybersell*, 130

F.3d at 418. Here, although the complaint alleges in conclusory fashion that NMC's website is "highly interactive and allows visitors to purchase or rent products directly through the website" -- an allegation flatly denied by NMC -- there is no evidence that the website was in any way directed at California residents. As noted previously, none of the sales NMC made to California entities were made through its website. Nor is there any allegation that the website, or even a section of it, contained content tailored for California residents. *See Brayton Purcell*, 606 F.3d at 1130; *LiveCareer, Ltd. v. Su Jia Techs. Ltd.*, No. 14-cv-03336-JST, 2015 WL 1448505, at *4 (N.D. Cal. Mar. 31, 2015). In fact, plaintiffs do not provide any evidence that any California user has ever used NMC's website, much less how many. *See Cybersell*, 130 F.3d at 419 (noting that "[s]ome courts have also given weight to the number of 'hits' received by a web page from residents in the forum state, and to other evidence that Internet activity was directed at, or bore fruit in, the forum state"). The mere existence of NMC's website is therefore insufficient to exercise personal jurisdiction over NMC in California.

## II. TRANSFER TO THE DISTRICT OF NEBRASKA

"Once a Court determines that it lacks personal jurisdiction, it may dismiss the case or, in the interest of justice, transfer the case under 28 U.S.C. § 1406(a)." *Wickline v. United Micronesia Devel. Assoc., Inc.*, No. C 14-00192 SI, 2014 WL 2938713, at *9 (N.D. Cal. Jun. 30, 2014) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)). Because NMC concedes that it is subject to personal jurisdiction in the District of Nebraska and venue is proper there, *see* Dkt. No. 32 at 9:21-23, the Court transfers this case to that district. While the District of Nebraska previously concluded in the context of a declaratory judgment action brought by NMC that it did not have personal jurisdiction over Jim Erickson and Erickson Productions, in the context of this case, the relevant question is whether that court has personal jurisdiction over *NMC*. As NMC has conceded, it does.

8

## CONCLUSION

The clerk is directed to transfer this case to the United States District Court for the District of Nebraska.

**IT IS SO ORDERED.**

Dated: July 6, 2015

$\qquad$
JAMES DONATO
United States District Judge